argument at this time. We call Olivarez v. T-Mobile USA Incorporated. We appreciate counsel's cooperation and patience with us as we get this all set up. I think it'll work well and we begin with Ms. Weiss. Thank you, Judge Smith. Good morning to all. This case is about equality of opportunity being fundamental to who we are and to who we aspire to be as a nation. And in this case, equality was run over by procedure. The District Court abused its discretion in failing to grant Mr. Olivarez's motion for leave to file a third amended complaint because the Rule 16 good cause standard had not been previously applied to the prior amendment. And I would note that the cutoff for motion practice on the scheduling order was in September, several months later. And that proposed third amended complaint was plausibly pleaded and it was much more detailed than the prior complaint. But even the prior second amended complaint was plausibly pleaded because no comparator is needed under the new case of Bostick, decided by the Supreme Court. And as discussed in the briefs, it discusses whether sex played a role, even in part, even if other factors contributed to the decision. So there could... What is there that tells us that comparators are no longer needed? Specifically, the the exercise. And I'll note that in this circuit, previously, the requirement was that there be a substantial factor of causation. And that has been mentioned many times in this circuit. And I note that it goes beyond but for causation. And it in fact means more than but for the negligence, the harm would not have under Desert Palace, decided back in 2003, after the Congressional Amendment of the Federal Civil Rights Act, under 2000 E-2M, which refers to a motivating factor, the plaintiff need only present sufficient evidence for a whatever other factors was a motivating factor for any employment practice. Now what is sufficient evidence under Desert Palace in the Fifth Circuit? And Al Kowalda and Okoye, cases referenced by defendants, say that a comparator appears to be needed. Now, is that correct? Bostick says no to this because it is espousing that but for causation is not the but for cause, but a but for cause. So whatever we might have thought that but for causation meant, it's now clarified to mean one of many causes, as long as this contributes to producing the result. And if that's true, how can a comparator be necessary? You're referring to sort of the mixed motive type back patterns. Am I understanding that correctly? That is certainly part of this. A situation where an employer, you know, many times in life you make decisions based on a variety of factors, not just one single exclusive factor, but I take it you agree that discrimination nevertheless remains a requirement, even if it doesn't have to be the sole exclusive motivation. That's correct, Your Honor. Okay, so what is your point? What is the allegation, since I think we're at the 12B6 phase, what is the allegation of discrimination in this case? I understand there's certainly an allegation of mistreatment, that you wanted to apply one more lead than was provided, but what's the allegation of discrimination? I note that I'm having a little trouble hearing, but I think I understand that you're asking what is the evidence of discrimination? Yes, yes, and I apologize for the glitch here. Oh, that's quite all right. Now, when he was dismissed, he was on leave. He had requested leave for certain disabilities, which fall within the Americans with Disabilities Act, and the reason that he was given for dismissal was that he had not submitted information from his doctors within the deadline to continue the leave, but in fact, as we have alleged in the proposed third amended complaint, that was given prior to the deadline, and so therefore it was inappropriate for him to be dismissed at that point. In addition, of course, he is alleging that because of his transgender identity, that that would also constitute a potential reason for having been dismissed under this, what he would say is a specious evidence that was given by defendants, and that has been detailed in his prior complaints to the company. One of the major issues of this piece of it is that did it occur, was it complained of in a timely fashion? But let's say you go to trial in this case, hypothetically, what are you going to tell the jury in the court about discrimination, about how somebody with a different gender identity would have been treated better? I understand there's a sort of a say-so. Your client says that there was discrimination, but what are you planning on showing other than just the claim, the bare, naked claim about discrimination? Or is that it? No, no, there's more. As set forth in the proposed third amended complaint, the record on appeal at 329, there was another employee there who Mr. Olivares would contend was similarly situated, who was harassing him and called him a number of epithets related to transgender identity, made inappropriately sexual jokes, yelled at the yelling lewd remarks across the sales floor, soliciting sexual contact. And these, you know, T-Mobile was informed of these, did not take prompt and effective action to stop that. There were a number of ostensibly gender-neutral actions, one of which is this termination for failure to submit medical information on the FNLA issue. But, you know, there's, so there's a lot of things that occurred, more than just, you know, a couple of items. So when the plaintiff found that HR at the defendants were not assisting him, I was doing nothing to assist him, he realized that it was futile to continue to complain. And in fact, he was given physical threats for having complained. Let me ask you this question. You filed the first and second amended complaints, the district court found them to be deficient, and you just alluded to a proposed third amended complaint. So what in the proposed third amended complaint was qualitatively different or added to from the second amendment complaint, such that, you know, you should still be in court? In other words, the court, they filed motions on your first one, the court said no, gave you leave, you amended, filed a second one, they filed motions. And so what's in this third one that's different in terms of what the court has said needs to be required? Yes, Judge Stewart. In this case, I did not file the first two complaints as I was not representing Mr. Olivares at that time. Those complaints were rather short and to the point, perhaps not a model of clarity. But the third amended complaint is 28 pages long. It contains detailed factual allegations about the appellant's disabilities, how they fit into the Americans with Disabilities Act, the specific statements that I alluded to just before in answer to Judge Ho's question about, you know, what have we got, all that is from the third amended complaint. So the third amended complaint really makes this into a meritorious case, whereas the first two left something to be desired. Now, I still contend that the second amended complaint contained enough overall that it should not have just been dismissed, but that there should have been permission to, either permission to amend or to move forward on whichever portion of the claims. But the court decided none of that. The court below simply said, you know, you have not demonstrated that you were a covered employee under the FMLA. And so that is out. You know, with regard to the others, you know, various other procedural issues about timing and so on and whether a comparator was named. So that's why I say procedure trumps substance in this case. What was the deadline, though, for the amendments of pleadings? Wasn't it before the second amendment amended complaint? Yes, it was. Yes, it was. Okay, so you already got one amendment and, you know, obviously on the one hand, courts try to work hard to provide justice, but on the other hand, there are deadlines. You've got one deadline, sorry, one opportunity to amend the complaint past the deadline. Your point is that the district court should have provided two. Well, my point more specifically is that the court did not reference the good cause standards of Rule 16 in moving that amendment forward. And the court's certainly entitled to do that. But the question then is, does the court get to come back and say, well, but that deadline is still out there. And even though, you know, no one spoke about it and there was no necessity of proving good cause, now you have to prove good cause. That's the major problem here, because all that the decision below says is that you didn't reference good cause under Rule 16 in your motion for reconsideration, so, or your motion to amend, so you're out. And my question is, how can that be? Given that we already had a previous amendment, that deadline was obviously, you know, no longer in play. It probably would have been moved had the court said, okay, you can go forward with your second amended complaint. So to suddenly say, no, you're cut off. And I would also mention that the actual scheduling order motion cut off was not till September, several months later. So the question with regard to the procedural issue here is, do we say that when a plaintiff seeks to amend, that putting aside any merits issues, that if the case goes on long enough and there's enough things happening, that you get beyond the scheduling date and that date is now being ignored by everybody, but then the plaintiff wants to come back and say, okay, I have a much better amendment now. It's 28 pages. It lists all the elements, all the counts. There's a detailed factual recitation explaining everything. And then the judge said, well, sorry, Rule 16. Now there's a number of cases from the Fifth Circuit that suggest that this should be, or that the plaintiff, or yes, the plaintiff should have been permitted to make that argument. So for me, I think that's up third, 517, Northern District of Texas 2020. The reason this is relevant, of course, it's not binding, but the reason it's relevant because it shows how district courts actually work in practice. I don't, I think there's no question, at least I assume there's no question, that the district court could have been nicer and we would not have found that to be an abuse of discretion. I think the question before us, tell me if you agree or not, given that the court called a second post-deadline amendment, whether that second denial is itself an abuse of discretion. Do you have any cases that say that it is abusive in that context? Yes. With regard to a motion to reconsider, specifically with regard to attendance, the Fifth Circuit is negative. I'm sorry, are you able to hear me? Yes, it's fine. Thank you. Great. That the 15, the Rule 15a, abuse of discretion, which is a more generous standard to the litigant, should be followed, and that would be the Torres case at 972 F3rd 660 from 2020 and the Rosenblatt case from 607 F3rd 413 2010. And what these teach is that dismissal of prejudice is such a severe penalty that it should only be permitted where there's really no merit to the case. And I think the issue here was the pleading was, as I said, you know, not a model of clarity. And there was a second opportunity to amend it. And as a matter of fact, it had been amended once before, you know, the court and the others, the defendants got involved. So there were really a number of bites at the apple. But the point is that looking at the Third Amendment complaint, one cannot help but see that this is a meritorious case that the issues that have been raised by the judge and the defendants previously are now addressed. Now, of course, then we have the question of let's assume arguendo. You started off talking about Bostock. Let's assume arguendo that the panel does not agree with your assertion that Bostock obviated the requirement for comparatives. So let's just assume that the panel's not going to hold it. I'm not saying what the panel's going to do, but what does that do with your argument? Assuming if comparatives are still required, Fifth Circuit cases are there, the other side cites that. I mean, how do you stay in court if that's the case? In the Third Amendment complaint, the third amendment complaint in the 28 pages contained the comparatives. I mean, how do you stay in court? That's the question. Oh, I see. Well, I mean, I think the importance of this is that if we were to look at whether or not the district court abused its discretion in denying leave to amend, and under the standards that I just mentioned in Rosenblatt and Torres, then this court could send it back to the district court for a determination of whether a third amended complaint should be permitted. And of course, the court could certainly direct, if it feels that there's sufficient information in the record to do so, that third amended complaint should be filed. But I think it makes more sense to have the district court judge look at what's actually in there as apparently, you know, there's no discussion in his order about what's in the third amended complaint. Comparator, not comparator, you know, timing, none of those issues that were raised previously that were fixed in the third amended complaint were now addressed. And... So you filed the second amended complaint in April of 2020? Yeah, Mr. Olivares filed that second amended complaint April 16th of 2020. And then you attempted to file the third in July. I guess that's just a few months later. That's correct, July 7th. But in between, the court granted the second motion to... On April 30th, the court dismissed the second complaint. Is that right? Well, no, April 30th. I mean, my understanding is April 30th is when the motions to dismiss were filed. And you can see that in the record of page 153 and 163. And then my understanding is the motion was granted with prejudice on June 9th of 2020. Okay, my mistake. Okay. Yeah, it's a complex case with a lot of moving pieces. Okay, so the third complaint you're saying adds two things. One, a comparator, thereby making it, in your view, not a futile amendment and qualitatively different from the second amendment. I think you also mentioned sort of harassment theory with these comments from a co-worker. Yes, and the relevance of this is that the T-Mobile did not respond to the plaintiff's complaints. In other words, a co-worker, the company's not responsible for a co-worker because we know it's a negligence theory. But once the company's on notice that this is occurring and they tell the plaintiff, look, this person is a high earner, you know, someone who brings in a lot of business, you know, we're not going to do anything. Now it's on the company. And so that creates evidence. And there's a lot of it in the third amended complaint that indicates that when this decision was made by T-Mobile to get rid of Mr. Olivares, that played a role. Their failure to address these complaints and the threats that were made because of the complaints indicates a bias based on his transgender status. So it's not a harassment, it's not a separate harassment hostile work environment theory. You're saying that just helps tell the story of discriminatory motive by the company. I think that is correct. I'm not looking at it right now, but I think that is correct. Yes. All right. Thank you. Ms. Weiss, you've saved time for rebuttal. I noticed that you've only saved one minute, so you need to be ready to make a really succinct and to the point rebuttal when it's time for that. Okay. Mr. Prude, if I'm pronouncing that right, and if I mispronounce it, please correct me. You've pronounced it correctly, Judge Smith. May it please the court, my name is Micah Prude, and I represent the Appliee T-Mobile, who is Mr. Olivares' former employer. As the court has heard, in late 2017, T-Mobile granted Mr. Olivares' request for leave. It extended that request several times or extended that leave several times at his request, and it was only after Mr. Olivares indicated about a half a year later that he was still unable to work that the company terminated his employment. Rather than reapply once he became eligible or able to work, Mr. Olivares filed this suit alleging transgender and disability discrimination. While before the district court, Mr. Olivares had multiple opportunities to satisfy the Iqbal Twombly standard, and although that requirement doesn't obligate him to submit evidence to establish all the elements of the Suprema Fascia case, it does require him to plead sufficient facts on all the ultimate elements of his claim. He tried and failed to do that three times. After his second petition was filed, the company moved to dismiss and noted a number of problems, including, most importantly for today, that he failed to plead any facts which would suggest that his protected status had anything at all to do with his dismissal. When asked, counsel opposite said that in this third amended complaint, the tie between those two things are the comments that a co-worker made approximately a year and a half earlier. We would submit that even if the court were to consider the third amended complaint, that is not sufficient. That might be sufficient to allege, and I think would be sufficient to allege, a hostile work environment claim, but it is not sufficient to allege anything relating to his termination. There's simply no connection between those comments, which he says happened in 2016, and the termination that took place a year and a half later. When T-Mobile filed its motion to dismiss, the court ultimately denied that without prejudice, but told Mr. Olivares, I agree that at least some of your complaints don't meet Rule 8. So Mr. Olivares had the benefit of that express instruction, as well as the benefit of the motion of T-Mobile and Broadspire, specifically saying what and where his first two complaints fell Mr. Olivares changed virtually nothing that matters in his second amended complaint. The company therefore moved to dismiss again. What about this addition of a comparator in the third amended complaint? Yes, your honor. So of course that wasn't before the court when the motion dismissed was decided, but the comparator that he's referring to is not a comparator at all. It is the alleged wrongdoer co-worker who made these comments that he says happened back in 2016. The question to consider whether or not that individual is an appropriate comparator would be whether or not the situation was similar. So for example, there's no allegation that that individual later was allowed to take leave. Sorry, Judge, I thought you were speaking. There's a little bit of feedback. He's not a comparator because there's no allegation that he was allowed to take any amount of leave, much less half a year of leave, and keep his job. So the contention or the notion that there is a comparator in the third amendment complaint we don't think stands up to any scrutiny when you actually look at what the third amendment complaint says. And of course we believe that it's important of course that when Mr. Olivares... So what's the theory? Pardon me, I need to obviously study this more carefully. What is the theory that this person is in fact a valid comparator if this person never sought any amount of leave at all? There's no theory put forth in Mr. Olivares' briefing, either here or down below. He just simply recites, I've named a comparator, and he points to the portion of his third amended complaint where he names that co-worker who made those comments. It just says that person is a comparator. Makes no argument and certainly doesn't address the issue that I just raised, Judge Ho. When he was responding to that motion to dismiss, of course, I think it's important to note that he told the court that he had made enough allegations. He didn't ask to submit the third amended petition or any other. He stood on his prior pleadings, which we think makes a difference here. The district court correctly dismissed those claims because he had failed to fix the issues that were present in the first two complaints. At that point in time, Mr. Olivares' current counsel appeared, filed a motion for reconsideration, as well as a motion to amend, and at that point, submitted the third amended complaint roughly a month after the court had dismissed the case. That motion did not identify any newly discovered facts. That motion did not identify any manifest error of law or fact by the district court, and although Mr. Olivares now claims otherwise, it did not present any relevant change in the law. The district court, therefore, correctly, in our view, denied that motion as well, and a ruling by this court to the contrary would materially undermine a district court's ability to manage its docket through the dismissal of claims that don't meet the Rule 8 pleading standards by allowing what you have here, which is an endless series of requests for leave to amend even after judgment has been granted. That was, I believe, the point or the issue that you were raising, Judge Ho, when you asked, you had already gotten one attempt to file a post-deadline motion, should you have gotten a second. If the court were to say yes, there's no reason that I can distinguish to say why she wouldn't be entitled, he wouldn't be entitled to a third or a fourth, or as many as the plaintiff might ultimately request. With my remaining time, I want to address two closely related topics. One, that the dismissal of this Title 7 claim was appropriate, including the comparator issue that's been raised, and second, why the denial of the motion for reconsideration and to amend was appropriate, notwithstanding the intervening Bostock case. Turning to the first issue, T-Mobile pointed out in its motion to dismiss that Mr. Olivares had not, quote, pled any facts suggesting that his gender was the cause of his termination. That was absolutely true as of the second amended complaint, and as I just addressed, that remains true even of the third amended complaint that was filed after the case was dismissed. The plaintiff did not then and did not now, does not now, say that in every instance, a plaintiff must absolutely name a comparator in a complaint. There are certainly other ways of establishing discrimination, at least at the pleading stage, but none of those other ways were done. So, for example, he doesn't allege that there's any direct evidence of discrimination. He doesn't allege, for example, that the company told him, look, we're going to allow you to take as much leave as you want, and then it was only after he disclosed his transgender status that the company changed its course. He doesn't allege anything along those lines, comparator or otherwise, tying his protected categories to his dismissal. Mr. Olivares, in his response to that motion, did not make any of the comparator arguments that he's making now, and so on top of all the issues and weaknesses that we think there are with the argument itself, we believe it was waived by not presenting it to the court in response to the motion to dismiss. Indeed, in response to that second motion to dismiss, Mr. Olivares did not address his Title VII or ADA claims at all. He simply told the judge, I want you to go back and re-read what I said in response to T-Mobile's first motion to dismiss. We don't believe that's appropriate and think that issue has been waived. Because of those facts and because the court directly applied this court's guidance about what a discrimination plaintiff must allege, namely a connection between the protected category and the adverse action that you are suing over, we believe the district court correctly denied or granted T-Mobile and Broadspire's motions and dismissed those claims with prejudice. Turning to the second issue, we believe that was both correct then but also correct after Bostock. When plaintiff filed his motion for reconsideration to amend, as noted, it didn't identify any new facts. It doesn't allege now that there were any. And now it doesn't allege that there's any manifest error by the district court. Instead on appeal, he says the motion for reconsideration should have been granted entirely because of the Bostock case. T-Mobile, of course, certainly recognizes that Bostock changed the law in one very important way, which is that it extends Title VII's was not the ground on which the district court based its dismissal of this case. In fact, the district court expressly said on page 232 of the record that he was not reaching that ground and was resolving the case on the topics that we just discussed. So although Bostock was a change in that regard, it wasn't a change that matters for purposes of Mr. Olivares' claims. Council has discussed Bostock's discussion of the causation standard, but we believe that was not a change in the law as it existed. But-for causation has always been the standard for Title VII claims, at least with respect to discrimination claims. Plaintiffs can also, of course, proceed under the motivating factor prong if they choose, but that's not an issue for this court. It's always been the case, even before Bostock, that there can be multiple but-for causes. Bostock certainly didn't say that it was making new law on that ground or that it was overturning any previous precedent. It cited a number of its previous cases, including Burrage and Nassar and Phillips and Manhart, which stand for exactly that proposition. And so we don't believe Bostock changed the law as it relates to but-for causation. And it would point out in any event, this is not a case where we have said the case ought to be dismissed because there's multiple but-for causes and some are legitimate and some aren't. The argument has always been Mr. Olivares' pleadings don't put sufficient facts out there for an inference to be raised that there was a connection between his protected categories and his dismissal. So what Mr. Olivares seems to primarily be left with is this comparator issue. And I'll note that in Mr. Olivares' brief before this court, he still seems to recognize that comparators are appropriate. He talks about Bostock requiring him to be paired with all the other employees in the workplace, presumably on the rationale that all the other employees are not transgender. I know that the Bostock court itself reached this decision in the context of defining the term to discriminate against a person to mean treating that individual worse than others who are similarly situated at the page 1740 of the Bostock decision. That language is strikingly similar to the language that the district court used on 232 of the record when he dismissed this case by saying Mr. Olivares does not allege that he was treated less favorably than a similarly situated employee outside his protected group. And of course the cases that we cited in our Rule 28J letter last week show that this court has continued to apply pre-Bostock law as it applies to the comparator issue. And so we don't believe Bostock was a relevant change in that regard either. With my remaining 40 seconds, I will just note that we do believe that Rule 16 standard applies. The case law that Mr. Olivares cites goes back to this court's DeSoy case from 1981. That case did not discuss at all the effect of a scheduling order and in fact was decided under the previous version of the rule from the 1930s which did not have a good cause standard at all. Mr. Olivares has not cited and we're not aware of any cases that have said that when there's been a deadline that has passed, an employee gets to drop back into the more lenient standard after a judgment has been granted. We would submit that would make no sense for there to be a period of time where the plaintiff has to make a higher standard and then only after the judgment do they get a more lenient Rule 15 standard. I'm out of time so unless there's any questions from the panel, I would thank you for your time and ask you to affirm. All right, thank you Mr. Prude. All right, next counsel is it Daylow or Dylow? You need to tell me which way to pronounce it. It's Dylow, your honor. All right, Ms. Dylow. Thank you. May it please the court, my name is Nicole Dylow. I represent Broad Spire in this appeal. Many of our arguments are similar to what T-Mobile has argued but I will go through the points that we that we want to emphasize the most. So we know that Mr. Olivares appeals the dismissal of his gender and disability discrimination claims as well as the denial of his motion for reconsideration and the denial of his request for leave to amend and file the third amended complaint. However, we argue that the district court's rulings were correct at every turn of the case and should be affirmed. The two key issues I'll focus on today will be the role of the Bostock opinion in this case. Our position is that it did nothing to undermine the use of comparators in Title VII cases and so the district court's dismissal of Mr. Olivares's gender discrimination claim and the decision not to reconsider that dismissal were both correct. The second issue that I will focus on is why the post-judgment amendment of Mr. Olivares's complaint would have been both improper and futile whether we apply Rule 16 or Rule 15 of the federal rules of civil procedure. So regarding the first point, Mr. Olivares has argued in his briefing that Bostock has the use of comparators in Title VII cases. However, as I think we've discussed previously, both in our brief and as T-Mobile has noted, the Bostock opinion itself as well as recent and historic cases from this circuit show that Bostock doesn't go quite as far as Mr. Olivares is suggesting it does. Bostock did not change the legal standard for pleading or approving Title VII claims and in our view, Mr. Olivares has mistakenly extrapolated Bostock's rejection of comparators at the group level to mean that the use of comparators is not valuable at any point in a Title VII case. But as demonstrated in the Bostock opinion, the Supreme Court has used comparator analyses to show why discrimination against both transgender and gay individuals is a form of sex discrimination. For example, on page 1741 of the opinion, the court explains that an while retaining the employee's female counterpart who is otherwise identical to him except for her sex. So this circumstance clearly shows that the Bostock opinion had no intention or effect of getting rid of the comparator analysis in Title VII cases. And as T-Mobile pointed out in its supplemental authorities letter, this court has recently recognized this notion in the Newbery versus Wincrest case that was issued earlier this year. Although Newbery involved sexual harassment claims, we believe that the holding still holds true and is correct that even though Title VII now applies to both transgender and gay individuals, the pre-existing legal standards still remain intact and unaffected. And so the comparator analysis is still valid. The Fifth Circuit has also upheld the use of comparator allegations and evidence in prior cases, most of which are cited in Broadspire's brief and a more recent one also in T-Mobile's supplemental authorities letter, the Lindsley versus TRT Holdings case. So all of these circumstances in our view demonstrate that the district court was correct to dismiss Mr. Olivares' gender discrimination claim and ultimately to deny reconsideration of the dismissal. When the district court ordered dismissal, all of the authority that's cited in our brief regarding comparators was still valid at the time. And as we've mentioned or argued in our brief, was also valid even after Bostock. And so when the district court was later asked to reconsider its decision, it correctly ruled that Bostock was not a relevant intervening change in the law, at least with respect to comparators and how they affect the Title VII analysis. So reconsideration wasn't warranted in that case. And even if we concede for purposes of argument that Mr. Olivares did not need to allege anything about comparators in order to survive dismissal, his second amended complaint still failed to plead any facts regarding direct evidence of discrimination or facts to support the notion that Broadspire discriminated against him based on his transgender status. The second amended complaint merely alleges that Mr. Olivares was that he requested leave and that Broadspire denied or delayed approval of his leave request, but otherwise doesn't plead any facts to show a nexus between the leave decision and his transgender status. And he conceded even in his second amended complaint that most of his leave requests were granted. And so this failure to satisfy the pleading standards justified both dismissal of the claim and the District Court's decision not to reconsider its dismissal. With my remaining time, I'll address the last issue that I wanted to cover today, which is Mr. Olivares' request to amend his complaint for a third time. In Broadspire's view, the District Court was also correct to deny this request under both Rule 16 and Rule 15, regardless of which one applies. As has been covered previously, Mr. Olivares requested leave to amend in July 2020, which was about four months after the District Court's March 2020 deadline to amend the pleadings had already expired. Because this request was then untimely under the scheduling order, it triggered the good cause requirement of Rule 16b, which the District Court did apply. And in requesting leave to amend, Mr. Olivares failed to address Rule 16 at all, which then justified the District Court's to decline to grant him leave to amend. Although Mr. Olivares has argued that the District Court waived its ability to enforce its scheduling orders simply because it deviated from less than a handful of deadlines during the case, there is no case law that's binding precedent in this circuit that justifies that result or supports that proposition, which Mr. Olivares has conceded in his briefs in this case. With respect to Rule 15, the liberal amendment standard changes once the court has entered judgment on the merits. And so Mr. Olivares was required to show that he could not have raised any of his proffered amendments before the District Court entered judgment, which he failed to do because, as is shown in the third amended complaint, virtually all of the proffered amendments are based on facts and case law that was available to Mr. Olivares prior to the court's entry of judgment. And finally, any further amendment of Mr. Olivares' complaint would have been futile. As has been discussed during this oral argument previously, Mr. Olivares had multiple chances to plausibly plead his claims but failed to do so at every turn, even with the District Court's express warning that he had not met the pleading standards. And specifically with the claims against Broadspire in the third amended complaint, Mr. Olivares still fails to plead any facts that suggest that there was any illegal disparate treatment based on either his disability or his request for FMLA leave. So in our view, the District Court's deny leave to amend was appropriate. And with 30 seconds remaining, unless the panel has any questions, I will conclude. All right, thank you, Ms. Dylo. Ms. Weiss, you've saved time for rebuttal. Yes, this may be a preview of the Crankshaw case now in appeal, number 20-9022, in which the lower court cited Troutman and Richardson to say that it's possible McDonnell Douglas does not apply when the employee concedes that discrimination was not the sole reason but argues a motivating factor. It's unclear if Richardson applies to all mixed motive cases or even all FMLA cases which are all mixed motives. And the Adams case notes that in 973 F. 3rd 343, in the third amended complaint, plaintiff pleads mixed motive and the briefs discuss how the mixture of motives come into play in a case like this. I would also note that T-Mobile admitted in its brief on page 21 that comparators are not necessary and yet it is arguing to the court today that comparators are absolutely necessary. And I would note that I need to correct an answer to you, Judge Ho, that there is a hostile work environment claim involved here which is permitted under Amtrak v. Morgan because as long as there's something that occurred within the time period, everything outside the time period can be brought within it. Thank you. Thank you, Ms. Weiss. Your case is under submission and again we thank counsel for your cooperation and patience and court is in recess.